IN THE CIRCUIT COURT OF THE EIGHTEENTH JUDICIAL CIRCUIT
IN AND FOR BREVARD COUNTY, FLORIDA

CASE NUMBER : 2016-CA-020116

**NORTH BREVARD HOSPITAL DISTRICT d/b/a PARRISH MEDICAL CENTER,** a Florida non-profit corporation,

Plaintiff,

v.

**MCKESSON TECHNOLOGIES, INC.,** a Delaware corporation,

Defendant.

_______________________________________/

**VERIFIED COMPLAINT FOR AN ACCOUNTING, DAMAGES AND INJUNCTIVE RELIEF**

The Plaintiff, NORTH BREVARD HOSPITAL DISTRICT d/b/a PARRISH MEDICAL CENTER ("PMC"), sues the Defendant, MCKESSON TECHNOLOGIES, INC., a Delaware corporation ("McKesson") and for its causes of action states:

**Jurisdiction**

1. This is an action for an accounting and damages, the amount of which exceeds the Court's minimum jurisdictional amount of $15,000, exclusive of interest, court costs and attorneys' fees. PMC also seeks temporary and permanent injunctive relief. The Court has jurisdiction over this case pursuant to Sections 26.012(2)(a) and (c), *Florida Statutes (2015).*

**Parties**

2. PMC is a public, not-for-profit 210 bed acute care hospital in Titusville, Florida. PMC has earned substantial honors for patient care and service, including America's No. 1 Healing Hospital for three (3) straight years, JD Power Distinguished Hospital Award, Consumer

Reports Safest Hospital in Florida, Outstanding Patient Experience Award and the Hospital Choice Award. PMC has also earned four disease-specific Gold Seal Certifications for patient care from the Joint Commission (American's premier health care accrediting organization) for acute coronary syndrome, breast cancer, heart failure and stroke. PMC is the victim of the unfair and deceptive trade practices perpetrated by McKesson as described in this Verified Complaint.

3. McKesson is a Delaware corporation registered to do business in Florida and operating in Brevard County, Florida. McKesson offers software, services and consulting to hospitals and other healthcare providers throughout the United States. McKesson represents that it is committed to the success of its healthcare clients such as PMC. McKesson claims to support healthcare organizations to address complex challenges, including the need to reduce costs, coordinate care, assume more risk and manage complex payment models. McKesson holds itself out as the Number 1 Healthcare IT Company in the United States. McKesson is guilty of perpetrating unfair and deceptive trade practices upon PMC as described in this Verified Complaint.

**Background Facts**

4. Beginning in 2010, PMC purchased or obtained licenses from McKesson to own or use various software, equipment and services for PMC's core information technology ("IT") for the clinical healthcare, financial and accounting operations of PMC.

5. McKesson's clinical healthcare and financial IT products and services were initially represented, marketed, sold and/or licensed to PMC under the product line named Horizon.

6. In about December, 2011, McKesson announced that it was going to cease completion of the development and support of its Horizon products and services. PMC had not

yet gone live with the Horizon software but was in various stages of implementing the Horizon clinical healthcare and financial solutions program marketed, sold and/or licensed to PMC by McKesson.

7. McKesson terminated development of the Horizon products and services and announced plans over time to converge McKesson's core clinical and revenue cycle health IT solutions for the Horizon and Paragon product lines onto Paragon's Microsoft platform.

8. PMC faced a significant deadline in July, 2013 to achieve "Meaningful Use" of its electronic medical records, so as to qualify for various Federal and State Medicare and Medicaid reimbursement. McKesson was well aware of PMC's requirements and need to achieve "Meaningful Use" and that McKesson's products and services were being purchased to meet such requirements and needs.

9. At material times to this case, McKesson misrepresented and failed to disclose to PMC the true status of the Horizon clinical healthcare and financial software products. As a consequence of McKesson's misrepresentations and failure to disclose and then its decision to terminate the development of the Horizon IT products and services software, after the Horizon product line had been heavily marketed, sold and/or licensed to PMC, substantial business interruption and damage to PMC was created.

10. McKesson's lack of performance was so substantial that, in March, 2012, McKesson promised to grant PMC a credit, in the amount of $6,241,149.00, for fees paid through that date to address PMC's concerns relating to McKesson's decision to terminate development of its Horizon Enterprise Revenue Management Software.

11. During 2011 and 2012, PMC and its project consultant, Xerox, became gravely concerned that, as a consequence of McKesson's termination of its Horizon products and

services and McKesson's failure to develop and implement the Paragon replacement products, PMC would not be able to timely achieve "Meaningful Use" by the July, 2013 deadline which was the major purpose for purchasing the Horizon and/or Paragon product lines. PMC has incurred considerable consulting and other expenses, including approximately $1 million dollars to Xerox consultants, as a consequence of the failure of McKesson's promises and representations regarding the quality, effectiveness and timeliness of McKesson's IT products and services to meet PMC's requirements, including the critical need to timely achieve "Meaningful Use."

12. Since 2010, McKesson has submitted hundreds of invoices to PMC and PMC has paid to McKesson approximately $17 million for IT products and services that would allegedly meet PMC's requirements and IT needs.

13. McKesson still claims to be owed approximately $4 million by PMC, whereas, PMC claims that it does not owe any additional sums to McKesson and is, in fact, entitled approximately $11 million of refunds from McKesson.

14. PMC is entitled to a full accounting of all of the IT products and services provided by McKesson to PMC, the implementation, utilization and value of such products and services and all payments made by PMC to McKesson.

15. McKesson is essentially requesting that PMC pay McKesson more than $11 million toward IT products, services and software that were never delivered, implemented or utilized by PMC.

16. PMC informed McKesson in late 2013 and early 2014 that, due to all of the defaults and defects in McKesson's performance, the Horizon and its successor Paragon program would not be implemented at PMC.

17. During the last three (3) years, PMC and McKesson have engaged in extensive efforts at financial reconciliation of the implementation and value of McKesson's IT products and services and PMC's payments. However, the parties have not been able to reach a consensus and agreed reconciliation due to the complexity as a result of the numerous McKesson business units involved and McKesson's deliberate lack of transparency and accountability for its products and services.

18. McKesson has repeatedly threatened the immediate suspension of software maintenance and customer support services to PMC for the limited McKesson IT products which were successfully implemented if PMC does not accede to its wrongful demand to pay $4 + million to McKesson for alleged IT products and services that were never delivered, installed or implemented at PMC and have no value to PMC.

19. McKesson has failed and refused to reconcile the implementation and value of its alleged IT products and services and the payments received from PMC. PMC contends that it has paid approximately $11 million to McKesson above the value of the products and services actually provided by McKesson and used by PMC. McKesson has failed and refused to reimburse PMC for the $11 million overpayment by PMC to McKesson due to the enormous amounts which McKesson billed PMC for IT products and services which were never delivered, installed, implemented or utilized at PMC.

20. The parties' complete financial reconciliation reflected that PMC has implemented McKesson products and services with a total value of $6,239,741.88, whereas, PMC has paid McKesson a total sum of $16,886,456.88. Therefore, including future billings and open AR credits, PMC has made overpayments equaling $11,267,325.92 for McKesson products or services that were never delivered, installed, implemented or utilized by PMC. A copy of the

PMC/McKesson reconciliation reflecting that PMC has overpaid McKesson, in the amount of $11,267,325.92, is attached hereto as Exhibit "1".

21. PMC has innocently and in good faith paid to McKesson approximately $17 million and yet PMC has only received approximately $6 million in value for the IT products and services provided by McKesson. PMC trusted and relied upon the word, commitments and promises of McKesson that its clinical healthcare and financial IT products and services would meet PMC's requirements and needs at its hospital, including achieving "Meaningful Use." McKesson has accepted and received approximately $17 million in payments from PMC. Nevertheless, McKesson has knowingly and willfully broken its representations and promises to PMC and only provided value through its IT products and services delivered, installed and actually used by PMC in the approximate amount of $6 million.

22. The actions of McKesson are wrongful, in breach of its duties of fair dealing and good faith and constitute unfair and deceptive trade practices in violation of Florida law.

23. McKesson has abused its position with PMC by threatening to discontinue and interrupt service of essential IT products and services to the detriment of PMC's hospital operations and patients, if PMC does not pay McKesson's wrongful demand for $4+ million. PMC has and will continue to pay the cost for the service and support of McKesson IT products that PMC is actually utilizing.

24. As the direct and proximate result of the wrongful acts of McKesson, PMC has sustained millions of dollars in damages.

25. McKesson has implemented a calculated and bad faith scheme designed to significantly overcharge PMC, then obfuscate and create confusion in the accounting of PMC's payments and the value of McKesson's IT products and services and then to leverage and coerce

PMC to pay McKesson an unlawful and unjustified $4+ million windfall penalty and profit for products and services which have no value by threatening to withhold service and support of the McKesson IT products that PMC is utilizing.

26. McKesson's actions directed toward PMC have been unfair, deceptive, unscrupulous, wrongful and fraudulent.

27. At all times material to this case, PMC has been fully ready, willing and able to meet all of its obligations to McKesson and to pay the reasonable and fair value for all of McKesson's IT products and services, provided that such products and services had value and met PMC's clinical healthcare and financial IT requirements, including "Meaningful Use," as McKesson had represented they would.

28. McKesson's demand for $4+ million from PMC is wrongful, unreasonable, in bad faith and without any legal or factual basis. McKesson's plan and wrongful demands and actions have been designed to assert leverage and coerce PMC to pay McKesson an unlawful and unjustified $4+ million windfall penalty and profit for IT products and services having no value.

29. There is a present need for a full accounting and for supplemental relief because PMC and McKesson disagree with each other's accounting and reconciliation as to PMC's payments and the implementation and value of McKesson's IT products and services. Moreover, McKesson's threatened termination of services to support and maintain the McKesson IT products used by PMC will wrongfully interfere with PMC's business and threaten patient care and public safety at PMC. McKesson's actions are unfair, deceptive, unscrupulous and unlawful under Florida law.

30. McKesson breached its promises, duties and representations to PMC in the following material respects which justify an award of damages and temporary and permanent injunctive relief:

A. McKesson blocked PMC from downloading Drug to Drug and Drug to Allergy interaction updates that alert Physicians of possible allergic reactions if prescribed to patients.

B. McKesson has placed PMC on hold for up to 2 hours before providing software support with their systems not operational, inhibiting PMC from providing essential patient care.

C. McKesson has intentionally misled PMC while entering into contracts, knowing McKesson intended to swap out the product/service, discontinue the product/service all together or provide a limited support configuration. This switching of products/services has resulted in significant harm to PMC by exhausting PMC's internal resources to persistently re-implement McKesson products and services.

D. McKesson's excessive contracting and amendment practices in conjunction with its penchant for swapping products, creating a need for partial contract cancellations and introduction of new contracts has resulted in 138 contracts, contract amendments, contract cancellations or purchase orders between McKesson and PMC since 2010. The excessive contracting practices have led PMC to believe that McKesson is not capable of reconciling PMC's true liability.

E. McKesson's transition to a new invoicing system led to an approximately 12 month delay in McKesson invoicing PMC. PMC believes this transition and related invoicing delays, which coincided with contract switching, has significantly contributed to McKesson's inability to reconcile its invoicing.

F. McKesson assured PMC leadership (Jay Parrish and George Mikitarian) that McKesson would provide additional resources to make McKesson Paragon go-live then proposed to bill PMC $4 million for the proposed resources.

G. PMC could not complete Paragon or Horizon Integration testing due to High and Critical system issues unresolved by McKesson at the time of Integration Testing:

- The McKesson Paragon system did not integrate with PMC's Care Fusion Pyxis product. This would have prevented PMC from billing, tracking or decrementing inventory in Operating Rooms or Materials Management settings.

- McKesson did not make available the Paragon Emergency Department module until 3 months prior to go-live. This was insufficient time to build the product. This would have led to PMC missing Meaningful Use, patient safety issues and maintenance of Paragon and Meditech Magic systems.

- The McKesson Paragon Emergency Department module was not fully developed. Paragon did not offer built T-sheets for patient documentation. T-Sheets are required to make the Paragon Emergency Department module functional. The Paragon T-sheets required more contracting.

- McKesson Paragon did not have a workflow for billing rehab patients or handling multiple rehab patient visits on 1 physician order.

- The McKesson Paragon payroll system could not e-mail direct deposit information out to PMC care partners.

- McKesson Perinatal Care did not communicate to Paragon. Thus, PMC was going to be required to maintain dual systems for patient registration and patient records.

- The McKesson Paragon Verbal Orders module did not function. Paragon programming was researching this issue while integration testing was scheduled.

- McKesson Paragon could not successfully upload ICD9 yearly coding updates. Thus, PMC would not have been able to bill for services.

- The McKesson Paragon Certified Physician Order Entry was not auto processing. Thus, PMC would have to dedicate clinical resources to process physician orders.

- The McKesson Paragon Operating Room module could not allocate supplies to multiple bin locations. This would not allow for proper inventory tracking.

- The McKesson Paragon Operating Room module could not print pathology reports for surgical specimens.

- The McKesson Paragon Operating Room module could only setup 1 line to attach charges for each type of anesthesia. PMC requires multiple timelines for start and stop times for anesthesia.

- The McKesson Paragon Materials Managements Contract Management module not developed enough to be functional for Parrish Medical Center.

Alternative contract tracking for materials would be necessary to move forward.

- The McKesson NovaPath and Horizon Lab was not integrated at integration testing due to delivery, deployment and development delays.
- The McKesson Paragon Registration module did not return all patient visits when conducting a patient search. In order to get visits you would have to search for each visit.

31. PMC has duly and substantially performed all of its obligations to McKesson. All conditions precedent to the initiation and maintenance of this action have been performed, have occurred, are excused or have been waived.

32. PMC has retained the GrayRobinson law firm to represent it in this action and is obligated to pay its attorneys a reasonable fee for their services. PMC is entitled to recover its reasonable attorneys' fees and costs from McKesson pursuant to the Florida Unfair and Deceptive Trade Practices Act.

33. PMC has been the victim of unfair and deceptive trade practices and fraud perpetrated by McKesson.

34. During the period from approximately 2010 through the present, McKesson received approximately $17 million in payments from PMC pursuant to a deliberate and calculated scheme of unfair and deceptive trade practices, fraud, misrepresentation and deceit.

35. McKesson knowingly obtained and used huge sums of PMC's money in violation of its representations and promises to PMC that the money would be used to acquire and implement clinical healthcare and financial computer systems at PMC that would meet its business requirements.

36. PMC reasonably relied on the representations and actions of McKesson and the representations and documents that McKesson presented to PMC to induce PMC to invest more than $16 million in McKesson's products and services.

37. The clinical healthcare and financial documents prepared and presented by McKesson to PMC and McKesson's representations to induce PMC's $16 million investment were false and known by McKesson to be false at the time they were prepared and given to PMC.

38. The misrepresentations by McKesson to PMC were material, McKesson knew that its representations were false and McKesson intended that PMC would be induced to expend substantial funds with McKesson based on its misrepresentations.

39. PMC has suffered substantial damages in excess of $11 million as a direct and proximate consequence of and in justifiable reliance upon McKesson's misrepresentations, unfair and deceptive trade practices, fraud and deceit.

40. The actions of McKesson were malicious, tortious and willful. McKesson has been unjustly enriched by the $16 million received from PMC for products and services worth significantly less or of no value. PMC has suffered substantial damages in excess of $11 million as a consequence of McKesson's unfair and deceptive trade practices, fraud and deceit. PMC has no adequate remedy at law for damages to protect it from McKesson's threat to terminate any further services or support for its products unless PMC pays McKesson $4+ million that is not owed. The actions of McKesson are causing and will cause irreparable harm to PMC.

41. PMC has sustained damages, in an amount in excess of $15,000, as a consequence of the wrongful actions of McKesson.

42. All conditions precedent to the initiation and maintenance of this action have been performed by PMC, have occurred, are excused or have been waived.

**Causes of Action**

**Count I - Accounting**

PMC sues McKesson and states:

43. PMC re-alleges and incorporates herein by reference the allegations set forth in paragraphs 1 through 42 above.

44. McKesson's charges to PMC for clinical healthcare and financial computer products and services involves extensive and complicated accounts.

45. The remedies available at law are not as full, adequate and expeditious as in equity to achieve a full and final accounting for all of McKesson's IT products and services, the value thereof and PMC's payments therefor.

WHEREFORE, PMC demands a judgment for an accounting against McKesson. In addition, PMC demands a judgment for damages against McKesson, in an amount in excess of $15,000, together with prejudgment interest and court costs.

**Count II – Damages and Injunctive Relief for Unfair and Deceptive Trade Practices**

PMC sues McKesson and states:

46. PMC re-alleges and incorporates herein by reference the allegations set forth in paragraphs 1 through 45 above.

47. McKesson is guilty of unfair and deceptive trade practices in its dealings with PNC to misappropriate more than $16 million from PMC for IT products and services which were of significantly less value to PMC.

48. McKesson is a Delaware corporation registered to do business and operating in Brevard County, Florida, engaged in the sale of clinical healthcare and financial IT products and services.

49. McKesson prepared and presented clinical healthcare and financial documents and made materially false representations to induce PMC to invest more than $16 million in its computer systems and information technology with McKesson.

50. McKesson knowingly obtained and used vast sums of PMC's money in excess of $16 million even though the IT products and services that McKesson represented to PMC to induce PMC to invest such funds were of significantly less value to PMC.

51. McKesson's sale of clinical healthcare and financial IT products and services in this action was a "consumer transaction" within the scope of the Florida Deceptive and Unfair Trade Act, §§ 501.201 to 501.213, *Florida Statutes* (2015).

52. As a result of McKesson's unlawful, deceptive and unfair trade practices, PMC has suffered damages in the approximate amount of $11 million.

53. The intentionally false misrepresentations made to PMC by McKesson were material, were intended to cause PMC to act in reliance thereon and did, in fact, cause PMC to expend substantial funds (approximately $17 million) in reliance thereon.

54. McKesson intentionally made materially false representations to PMC for the purpose of fraudulently inducing PMC to expend substantial funds in reliance upon misrepresentations regarding the information technology, products and services McKesson was to supply to PMC.

55. McKesson knew that the misrepresentations described above were false and would be relied upon by PMC in making its decision to expend more than $16 million with

McKesson for its clinical healthcare and financial IT products and services. McKesson willfully and maliciously made false statements and misrepresentations to PMC and knowingly concealed the true material facts as part of a fraudulent scheme to induce PMC to expend more than $16 million on clinical health and financial computer products and services.

56. McKesson made such false material misrepresentations and intentionally concealed material facts for the purpose of inducing PMC to rely on such fraudulent misrepresentations and concealment and to expend substantial funds in reliance thereon.

57. As a consequence of McKesson's unfair and deceptive trade practices, PMC has suffered damages in an amount in excess of $15,000 and in the approximate amount of $11 million.

WHEREFORE, PMC demands a judgment for damages against McKesson, in an amount in excess of $15,000, together with prejudgment interest, attorneys' fees and court costs. PMC also demands temporary and permanent injunctive relief against McKesson to require that McKesson continue to provide support for the McKesson products and services that PMC continues to utilize.

**Count III – Claim for Temporary and Permanent Injunctive Relief**

PMC sues McKesson and states:

58. PMC re-alleges and incorporates herein by reference the allegations set forth in paragraphs 1 through 57 above.

59. PMC, its patients and the overall patient care at PMC will be materially and adversely affected and PMC and its patients will suffer irreparable injury if McKesson carries out its threats to interrupt and discontinue clinical healthcare and financial IT support and services if a temporary and permanent injunction is not granted.

60. Damages or any remedy at law alone will be inadequate in preventing and remedying the irreparable harm that PMC, its patients and the overall patient care at PMC will suffer if a temporary and permanent injunction is not granted to prevent McKesson from carrying out its threats to terminate the clinical healthcare and financial IT products and services that PMC is currently utilizing if PMC does not pay $4 + million to McKesson which is not owed.

61. PMC has a clear legal right to the requested relief because McKesson's wrongful threats to discontinue or interrupt support and services which PMC is currently utilizing to coerce payment of $4 + million has no legal or factual justification.

62. Granting PMC temporary and permanent injunctive relief will serve the public interest by preventing the irreparable harm which PMC's patients and the overall patient care at PMC would suffer if McKesson interrupts or terminates the support and service for the McKesson IT products and services which PMC continues to utilize.

63. PMC has and will continue to pay McKesson for the software maintenance fees and services for McKesson's IT products and services that PMC continues to utilize.

WHEREFORE, PMC demands temporary and permanent injunctive relief against McKesson to require that McKesson continue to provide services and support for the IT products and services which PMC continues to utilize, together with its costs and such further relief as the court finds to be just and proper.

**Demand for Jury Trial**

PMC demands a trial by jury on all issues that are so triable pursuant to Rule 1.430, *Florida Rules of Civil Procedure*.

Dated this 24th day of March, 2016.

JOHN M. BRENNAN
Florida Bar No.: 297951
Primary E-Mail Address:
jay.brennan@gray-robinson.com
Secondary E-Mail Address:
jessica.rolon@gray-robinson.com
GrayRobinson, P.A.
301 E. Pine Street, Suite 1400
Post Office Box 3068
Orlando, Florida 32802-3068
(407) 843-8250 Telephone
(407) 244-5690 Facsimile
Attorneys for Plaintiff,
NORTH BREVARD HOSPITAL DISTRICT
d/b/a PARRISH MEDICAL CENTER, a Florida
non-profit corporation

**VERIFICATION**

North Brevard Hospital District d/b/a Parrish Medical Center

By: ______________________
Shawn Newberry, PMC Information Systems Director

STATE OF FLORIDA
COUNTY OF BREVARD

I HEREBY CERTIFY that, before me, an officer duly authorized in the state and county aforesaid, to take acknowledgments, personally appeared SHAWN NEWBERRY, Information Systems Director for North Brevard Hospital District d/b/a Parrish Medical Center, the plaintiff in this case, who, after being duly sworn, deposes and says that he has personal knowledge of the facts recited in the complaint and the material allegations contained therein and that the facts recited in the complaint are true and correct.

WITNESS my hand and official seal in the County and State aforesaid this 24 day of March, 2016.

Tracy Hudgens
______________________
(NAME: Printed, Typed or Stamped)
Notary Public, State of Florida
My commission expires: 7/12/18

