IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

NORTH BREVARD COUNTY HOSPITAL
DISTRICT d/b/a PARRISH MEDICAL
CENTER,

    Plaintiff,

vs.

McKESSON TECHNOLOGIES, INC.,

    Defendant.

Case No.: 6:16-cv-00637-Orl-40DCI

### DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO AMEND ITS THIRD AMENDED COMPLAINT

Defendant McKesson Technologies, Inc. ("McKesson"),[1] by and through its undersigned counsel, hereby submits this Opposition to Plaintiff North Brevard County Hospital District d/b/a Parrish Medical Center's ("PMC's") Notice of Scrivener's Error, or Alternatively, Motion for Leave to Amend its Third Amended Complaint (Doc. 87).

### INTRODUCTION

On June 29, 2016, PMC filed an amended complaint containing allegations for breach of express warranty based on Fla. Stat. § 672.313(1)(c), under which "[a]ny sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model." PMC twice amended its complaint since then, leaving this allegation intact.

In the intervening fifteen months, the November 30, 2016 deadline to amend the pleadings has passed. The parties have completed document discovery and written

---

[1] McKesson has contributed the interests in the suit, including the Paragon and Horizon products and the related contracts, to PF2 EIS LLC. The parties are currently negotiating an agreed motion to substitute parties. "McKesson" herein refers to any and all proper defendants.

discovery, and have taken depositions of 30(b)(6) and other witnesses. These depositions have included an examination of the factual basis for PMC's assertion of § 672.313(1)(c). Most recently, the parties filed motions for summary judgment and the briefs in opposition. Trial is set for January 2, 2018, only three months away.

Now, after all this time, PMC claims it committed a "scrivener's error" in asserting its claim under § 672.313(1)(c), and asks the Court to allow it to change its claim to one based on a violation of § 672.313(1)(a)-(b). But McKesson has already taken discovery on this issue and briefed summary judgment on this ground.

PMC's proposed amendment is inappropriate at this stage. Because PMC is well past the deadline to amend, PMC must first show good cause. It cannot do so because it was not diligent in discovering or rectifying this error. In fact, it filed three amended complaints, each of which contained a claim based specifically upon § 672.313(1)(c). Even if PMC were able to show good cause, there are substantial reasons to deny leave to amend, including undue delay on PMC's part, prejudice to McKesson of an amendment, and the fact that its amendment would be futile in the face of the parties contract.

## ARGUMENT

### I. Legal Standard

In its motion, PMC requests leave to amend under Federal Rule of Civil Procedure 15(a). But PMC ignores an entire threshold step in its analysis as outlined in the very cases it cites—whether its request is outside the scope of the Court's Case Management and Scheduling Order. *See Vazquez v. LCM Inv. Grp., Inc.*, No. 6:05-cv-59-Orl-28DAB, 2006 WL 4835922, at *2 (M.D. Fla. Aug. 24, 2006) ("[T]he liberal amendment policy of Rule

15(a) is bounded by the deadlines set forth in the trial court's scheduling order entered pursuant to Federal Rule of Civil Procedure 16."); *see also Canal Indem. Co. v. Margaretville of NSB, Inc.*, No. 6:11-CV-2001-ORL, 2014 WL 5341873, at *1 (M.D. Fla. Sept. 4, 2014) (Byron, J.) (same); Doc. 34 at 1. This Court's Local Rules specifically state that a "motion to amend any pleading . . . is distinctly disfavored after entry of the Case Management and Scheduling Order." Local Rule 3.05(c)(2)(E).

When a plaintiff attempts to amend its complaint after the deadlines in the court's scheduling order, "a two-step analysis is appropriate." *Arianas v. LVNV Funding LLC*, 307 F.R.D. 615, 616 (M.D. Fla. 2015) (citing *Sosa v. Airprint Sys., Inc.*, 133 F.3d 1417, 1419 (11th Cir. 1998)). First, the plaintiff must show that "good cause" exists to modify the scheduling order. *Sosa*, 133 F.3d at 1418; Fed. R. Civ. P. 16(b)(4) ("A schedule may be modified only for good cause and with the judge's consent."). "The objective of Rule 16(b) is to 'assure[] that at some point . . . the pleadings will be fixed.'" *Canal*, 2014 WL 5341873, at *1 (alterations in original) (quoting Fed. R. Civ. P. 16 advisory committee's 1983 note). The good cause standard "precludes modification" where the party seeking amendment was not diligent. *Sosa*, 133 F.3d at 1418; *see also Local Access, LLC v. Peerless Network, Inc.*, No. 6:14-cv-399-Orl-40TBS, 2017 WL 951651, at *3 (M.D. Fla. Mar. 10, 2017) (Byron, J.) ("If [the plaintiff] cannot demonstrate its diligence in seeking amendment, the Court's inquiry ends.").

Courts consider multiple factors in assessing diligence, including whether "1) the plaintiff failed to ascertain facts prior to filing the complaint and to acquire information during the discovery period; 2) the information supporting the proposed amendment was

3

available to the plaintiff; and 3) even after acquiring information, the plaintiff delayed in asking for amendment." *Lord v. Fairway Elec. Corp.*, 223 F. Supp. 2d 1270, 1277 (M.D. Fla. 2002).

Only if a party is able to demonstrate good cause does the analysis shift to the second step, the question of whether the Court should grant leave to amend under Rule 15(a). *Sosa*, 133 F.3d at 1419. The Rule 15 standard is broader, allowing amendments to be "freely given," but only "when justice so requires." Fed. R. Civ. P. 15(a)(2). Even then, courts have broad discretion to determine whether to grant such a motion, and amendment is inappropriate if any of a number of factors—"such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc."—is present. *Foman v. Davis*, 371 U.S. 178, 182 (1962).

## II.     PMC Does Not Have Good Cause to Amend Under Rule 16(b)(4)

Under the Case Management and Scheduling Order, the deadline to amend pleadings in this case passed on November 30, 2016. Doc. 34 at 1. PMC does not argue that it has good cause to modify the Court's scheduling order, and in fact such good cause does not exist. PMC claims that its citation to Fla. Stat. § 672.313(1)(c) is simply a "scrivener's error" and asks for leave to amend to correct the error. But the question before the Court is not whether an error is caused by some excusable neglect that should be corrected; rather, it is whether PMC has been diligent in correcting its supposed error. *Sosa*, 133 F.3d at 1418 & n.2

PMC first filed an amended complaint on June 29, 2016 that included the count based on Fla. Stat. § 672.313(1)(c). Doc. 29 at 28. In the intervening 15 months, PMC amended its complaint twice—once just before the deadline in the Court's Scheduling Order (on November 11, 2016), *see* Docs. 45 and 47; and once after, on May 1, 2017, following an unopposed motion to amend, *see* Docs. 62 and 64. At each amendment, or at any time throughout this period, PMC could have corrected its error if it had exercised diligence.

Beyond the fact that it filed multiple complaints and had over a year to correct what it now deems an error, PMC had other opportunities to discover that it cited Fla. Stat. § 672.313(1)(c). McKesson specifically asked PMC's CEO and 30(b)(6) witness about whether there was any "samples or models" upon which PMC relied. Mikitarian Dep., Doc. 74-2 at 38:20-39:8. Even in its own motion for summary judgment, PMC cited to § 672.313(1)(c) despite quoting subsections (a) and (b) of the statute. Doc. 17 at 16. This is not a situation where PMC has discovered some new fact in discovery that it could not have otherwise known. This failure to discover its own purported error cannot be explained by anything other than a lack of diligence. *Cf. Canal*, 2014 WL 5341873, at *2-3 (denying leave to amend to modify statutory claim for rescission of contract to state a claim for common law rescission of contract following summary judgment).

In fact, the latest date PMC can possibly claim that it lacked knowledge about this error was September 1, 2017, the date it received McKesson's motion for summary judgment, which explicitly argued that PMC had failed to provide evidence of a sample or model. Doc. 78 at 23. Yet despite this knowledge, PMC waited more than two weeks, until ***after*** McKesson had filed its own response to PMC's motion for summary judgment, to

notify McKesson of the purported error. *See* Email from M. Santana, Sept. 18, 2017 (attached hereto as Ex. A to the Decl. of A. Yacoub); *see Lord*, 223 F. Supp. 2d at 1277 (noting a factor in determining good cause is that "even after acquiring information, the plaintiff delayed in asking for amendment").

PMC claims that McKesson is trying to take "unfair advantage" of PMC's supposed error "to create a straw man." Doc. 87 at 2. But the only thing McKesson has done to this point to PMC's detriment is move for summary judgment based upon the allegations that are plainly written in PMC's complaint and upon which discovery was taken. Now, PMC tries to undercut McKesson's motion for summary judgment by amending its pleadings, but it is too late for that.

At some point, McKesson is entitled to rely on the claims PMC actually makes in its complaint, and need not defend itself against what PMC might mean or what PMC could have alleged. *See Canal*, 2014 WL 5341873, at *1 ("The objective of Rule 16(b) is to 'assure[] that at some point . . . the pleadings will be fixed.'"). We are now 10 months after the deadline for amendments, have had three amended complaints, have completed 30(b)(6) depositions, and have substantially briefed summary judgment. The parties are three months from trial. It is well past time for PMC to be able to correct an error due to its own neglect.

### III.     Leave to Amend Is Inappropriate Under Rule 15(a)(2)

Even under the more lenient standard of Rule 15(a)(2), PMC has not demonstrated that leave to amend is appropriate. "A district court need not . . . allow an amendment (1) where there has been undue delay, bad faith, dilatory motive, or repeated failure to cure deficiencies by amendments previously allowed; (2) where allowing amendment would cause

undue prejudice to the opposing party; or (3) where amendment would be futile." *Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001) (citing *Foman*, 371 U.S. at 182). Each of these factors is present here.

### A. Undue Delay

As discussed above, this is not a situation where PMC suddenly discovered new evidence justifying amendment. Instead, nearly 15 months after first filing an amended complaint citing Fla. Stat. § 672.313(1)(c), PMC wants to correct an alleged error it could have discovered at any time. *See Barrett v. Indep. Order of Foresters*, 625 F.2d 73, 75 (5th Cir. 1980) (upholding denial of leave to amend because "[e]ven though the motion was not filed until nearly ten months after the original complaint, there would appear to be no matters that appellant proposed to add which could not have been raised initially.").[2] Beyond delay, PMC "repeated[ly] fail[ed] to cure [the] deficienc[y]" in its two amendments during that period. *Foman*, 371 U.S. at 182. PMC claims this was nothing more than a simple mistake, but it does not address why it did not discover the mistake based on, for example, McKesson's questions about "samples or models" during PMC's 30(b)(6) deposition or when PMC was drafting its motion for summary judgment and cited Fla. Stat. § 672.313(1)(c) while quoting subsections (a) and (b). Mikitarian Dep., Doc. 74-2 at 38:20-39:8; Doc. 17 at 16.

PMC also continued to unduly delay after it knew of the purported error. McKesson's summary judgment motion specifically addressed § 672.313(1)(c) and pointed out that PMC had failed to provide evidence of a sample or model. Doc. 78 at 23. Rather

---

[2] This Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

than raise the issue immediately, PMC waited until after McKesson had responded to PMC's motion for summary judgment to inform McKesson of its mistake. *See* Email from M. Santana, Sept. 18, 2017 (attached hereto as Ex. A to the Decl. of A. Yacoub).

### B. Prejudice

Allowing PMC to amend its complaint at this stage would also unduly prejudice McKesson. At this point, the parties have completed document discovery and written discovery, and have completed 30(b)(6) depositions. The parties have filed their summary judgment briefs. Trial is three months away. Yet PMC now wants to advance a new fact-intensive legal theory about representations McKesson made, independent of the written contract, that form an express warranty. *See Senger Bros. Nursery, Inc. v. E.I. Dupont de Nemours & Co.*, 184 F.R.D. 674, 678 (M.D. Fla. 1999) ("When a plaintiff chooses to wait an artificially delayed period, which enables him to benefit from discovery of issues, or a lack thereof, the . . . defendants are, subsequently, forced to entail expenses that would have never arisen if plaintiff had acted in a timely fashion.").

PMC claims that its pleadings "clearly indicate that PMC did not intend to rely upon subsection (1)(c)." Doc. 87 at 2.[3] PMC also points to its "similar claims" for fraud and for deceptive and unfair trade practices, though it does not explain why PMC's fraud claims should have any bearing on its contract claims. *Id.* at 3. PMC's argument is essentially that McKesson should have known what PMC intended to argue, and that there is no prejudice on that ground.

---

[3] Though PMC's pleading does not use the words "sample" or "model," it also neither cites to nor directly quotes from Fla. Stat. § 672.313(1)(a)-(b). Instead, it simply incorporates language from the title of the statute.

8

In fact, the exact opposite is true. "Liberal pleading does not require that, at the summary judgment stage, defendants must infer all possible claims that could arise out of facts set forth in the complaint." *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004). A defendant must be able to take a complaint at face value and to assume that each claim is asserted for a specific reason. PMC's count III is not just a broad count for express warranty, but cites Fla. Stat. § 672.313(1)(c) explicitly. The reference to a sample or model is a unique element in count III. It is not a repackaged version of another count. PMC *was* shown demos of the Paragon system during negotiation, and McKesson questioned PMC's 30(b)(6) witnesses about that. *See* Newberry Dep., Doc. 74-3 at 25:9-12; *see also* Mikitarian Dep., Doc. 74-2 at 38:20-39:8. McKesson is allowed to rely on the explicit allegations in the complaint and need not read between the lines to defend itself against a claim that is not pleaded.

Here, McKesson has focused its discovery and preparation on the whether there was a sample or model that created an express warranty, and has incurred the costs of that preparation and of preparing a summary judgment motion on that issue. Conversely, McKesson has not prepared its defense on PMC's new allegation, and it would prejudice McKesson at this stage of the litigation to require it to do so.

### C. Futility

A "district court may properly deny leave to amend the complaint under Rule 15(a) when such amendment would be futile. . . . [D]enial of leave to amend is justified by futility when the complaint as amended is still subject to dismissal." *Hall v. United Ins. Co. of Am.*, 367 F.3d 1255, 1263 (11th Cir. 2004) (citations and internal quotation marks omitted) (citing

9

*Foman*, 371 U.S. at 182, and quoting *Burger King Corp. v. Weaver*, 169 F.3d 1310, 1320 (11th Cir. 1999)).  Here, PMC's new claims should be dismissed for similar reasons as its claim for breach of express warranty by sample or model.  *See* Doc. 78 at 23.[4]

PMC's allegation is that McKesson made certain representations during the negotiations for Paragon, that those representations formed the basis of the bargain between the parties, and so the representations constitute express warranties under Fla. Stat. § 672.313(1)(a)-(b).  *See* Doc. 87 at 2; Doc. 67 at 16.  However, PMC ignores that the parties signed a contract, one that specifically disclaims such warranties and that also includes an integration clause preventing PMC from relying on evidence outside the contract.

The relevant disclaimer language of the parties' contract reads:

> 3.7 Disclaimer; Exclusive Remedy. THE WARRANTIES IN THIS [Agreement] ARE IN LIEU OF ALL OTHER WARRANTIES, ***EXPRESS AND IMPLIED*** . . . . MCKESSON DOES NOT WARRANT THAT THE PRODUCTS OR SERVICES WILL YIELD ANY PARTICULAR BUSINESS OR FINANCIAL RESULT OR THAT THE SERVICES WILL BE PERFORMED WITHOUT ERROR OR INTERRUPTION.

Master Agreement, Doc. 78-2, ¶ 3.7, at 8 (emphasis added).  The integration clause of the parties' contract reads:

> 5.27 Entire Agreement. This MA, including Product Schedules, Exhibits, Order Forms, and documents incorporated by reference, is the complete and exclusive agreement between the parties with respect to the subject matter hereof, superseding and replacing all prior agreements, communications, and understandings (written and oral) regarding its subject matter.

*Id.* ¶ 5.27, at 15.

---

[4] PMC's claim is now also well-beyond the four-year statute of limitations for contract actions "not founded on a written instrument."  Fla. Stat. § 95.11(3)(k).

Florida law is clear that integration clauses and warranty disclaimers are valid and enforceable. Fla. Stat. §§ 672.202, 672.316. In fact, "*even absent a merger clause* . . . , it is a basic tenet of contract law that reliance on representations by a contracting party in a suit based on the contract is unreasonable where the representations are not contained in the subsequent written agreement between the parties." *Barnes v. Burger King Corp.*, 932 F. Supp. 1420, 1428 (S.D. Fla. 1996) (emphasis added) (citing *Pettinelli v. Danzig*, 722 F.2d 706, 710 (11th Cir. 1984)); *see also Rose v. ADT Sec. Servs., Inc.*, 989 So. 2d 1244, 1248 (Fla. 1st DCA 2008) ("We agree with the trial court that the [plaintiffs] cannot claim that they justifiably relied on oral representations when the terms of the subsequent written agreement expressly and conspicuously contradict the oral statements."); *BVS Acquisition Co., LLC v. Brown*, 649 F. App'x 651, 659 (11th Cir. 2016). To date, PMC has presented no argument or reason why the parties written, integrated contract should not control, as the law requires. The contract is fatal to this express warranty claim, whether PMC relies on a sample, model, or any representation. Because PMC's amendment is futile, leave to amend should not be granted.

### IV. If Leave to Amend Is Granted, McKesson Requests Amendment Be Conditioned Upon Further Discovery and the Payment of Costs

"[I]n the exercise of sound discretion, the granting of leave to amend can be conditioned in order to avoid prejudice to the opposing party." *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1271 (11th Cir. 2006). If this Court grants PMC leave to amend its complaint to add these new claims, McKesson will need discovery to fully prepare its defense.

To that end, in the event leave to amend is granted, McKesson requests that the Court require PMC to detail with particularity exactly what the "affirmations, promises, representations, and descriptions" are upon which it relies for this claim. *See Gilmour*, 382 F.3d at 1315 ("Efficiency and judicial economy require that the liberal pleading standards under *Swierkiewicz* and Rule 8(a) are inapplicable after discovery has commenced." (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002)). McKesson also requests that this Court allow McKesson a further Rule 30(b)(6) deposition on the facts underlying these claims. Last, McKesson requests the Court impose on PMC the costs of this further preparation. 6 Charles Alan Wright et al., *Fed. Practice & Procedure* § 1486 (3d ed. 2017) ("The most common condition imposed on an amending party is costs," including the costs of "additional preparation in order to meet the new issues or theories that are asserted."); *see also Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 599 (5th Cir. 1981) ("[The trial court] has discretion to tax the costs of the repeated discovery proceedings against [the defendant]."); *Boyce v. Augusta-Richmond Cnty.*, 111 F. Supp. 2d 1363, 1376 (S.D. Ga. 2000) ("In the present case, it is appropriate for the Court to allow the Plaintiffs to amend the complaint on the condition that they compensate [the Defendant] for certain discovery fees and expenses related solely to the deleted claims.").

## **CONCLUSION**

For the foregoing reasons, McKesson requests that the Court deny PMC's Motion for Leave to Amend its Third Amended Complaint. In the alternative, McKesson requests the relief outlined in Section IV, above.

Respectfully submitted this 28th day of September, 2017.

|  |  |
|---|---|
| Michael P. McMahon, Esq.<br>   Florida Bar Number: 0201189<br>AKERMAN LLP<br>Post Office Box 231<br>Orlando, FL 32802-0231<br>Telephone: (407) 423-4000<br>Fax: (407) 843-6610<br>Email: michael.mcmahon@akerman.com | /s/Timothy G. Barber<br>Timothy G. Barber (*pro hac vice*)<br>  (Trial Counsel)<br>Antonio E. Lewis (*pro hac vice*)<br>KING & SPALDING LLP<br>100 N Tryon Street, Suite 3900<br>Charlotte, NC 28202<br>Telephone: +1 704 503 2600<br>Facsimile: +1 704 503 2622<br>Email: tbarber@kslaw.com<br>       alewis@kslaw.com<br><br>Alex R. Yacoub (*pro hac vice*)<br>KING & SPALDING LLP<br>1180 Peachtree St. NE<br>Atlanta, GA 30312<br>Telephone: +1 404 572 2758<br>Facsimile: +1 404 572 5100<br>Email: ayacoub@kslaw.com<br><br>*Attorneys for Defendant* |

## CERTIFICATE OF SERVICE

I hereby certify that on September 28, 2017, I electronically filed this Motion for Summary Judgment with the Clerk of Court using the CM/ECF system, which will send notification to all counsel of record.

                                         */s/Alex R. Yacoub*
                                         Alex R. Yacoub